IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 13–cv–00057–KMT

14200 PROPERTIES, L.L.C., a Colorado limited liability company,

    Plaintiff,

v.

DEPARTMENT OF TRANSPORTATION, STATE OF COLORADO, an agency of the State of Colorado, and
CITY OF AURORA, COLORADO, a Colorado municipal corporation,

    Defendants.

---

# ORDER

---

    This matter is before the Court on "Defendant City of Aurora's Motion to Dismiss" [Doc. No. 15] ("MTD") filed January 31, 2013. Plaintiff filed its Response on March 7, 2013 [Doc. No. 20] "(Resp."), and Defendant filed its reply on March 25, 2013 [Doc. No. 22] ("Reply"). On August 1, 2013 the Court converted the Motion to Dismiss into a Motion for Summary Judgment and invited the parties to submit additional briefing and exhibits to support their positions under Fed. R. Civ. P. 56. Plaintiff filed its "Petitioner 14200 Properties, L.L.C.'s Additional Brief Pursuant to the Court's August 1, 2013 Order" [Doc. No. 34] ("Pl.Supp.Br.") and Defendant City of Aurora, Colorado ("Aurora") filed "Defendant City of Aurora's Supplemental Briefing In

Support of its Motion for Summary Judgment" [Doc. No. 35] (Aurora Supp.Br.").[1]  As to Plaintiff and Defendant Aurora, the matter is now ripe for ruling.

### *STATEMENT OF THE CASE*

In approximately1996, CDOT undertook construction of public roadway improvements referred to generally as the Colfax Median Improvements on East Colfax Avenue extending east from the intersection of I-225 and East Colfax Avenue.  (Petition [Doc. No. 3], ¶¶ 9-10.) Plaintiff, owner of adjacent property located at 14200 East Colfax Avenue, Aurora, Colorado ("Subject Property"), alleges that as part of the Colfax Median Improvements, CDOT replaced a center ditch or depression running between east bound and west bound lanes of East Colfax Avenue between I-225 and Chambers Road with a series of center median structures or islands. (*Id.*)  Plaintiff alleges that in 1997, when the Colfax Median Improvements were completed, "[t]he center medians or islands constructed by CDOT as part of the Project created a dam or diversion, forcing water to flow west along the south side of East Colfax Avenue toward and onto the Subject Property, rather than flowing north across East Colfax Avenue."  (Petition at ¶ 20.)  Plaintiff alleges that prior to the Colfax Median Improvements only "a very small portion (northeast corner) of the Subject Property was located within the 100-year flood plain as designeated by FEMA" on FIRM 0800020180E, August 16, 1995, and that portion did not include the part of the property containing the building.  (*Id.*, ¶¶ 13 and 14.)  Plaintiff alleges that

---

[1]Defendant Department of Transportation, State of Colorado ("CDOT") filed its Answer on January 24, 2013 [Doc. No. 14] and neither joined in Aurora's Motion to Dismiss nor submitted briefing on the statute of limitations issue once the Court had ordered conversion of the motion to one for summary judgment.

subsequent to the Colfax Median Improvements, changes in elevation created by the new medians or islands impacted the floodway and floodplain and "the Subject Property became inundated in the 100-year floodplain as shown on FEMA FIRM No. 08005C0177 K, revised December 17, 2010." (Petition, ¶ 28.) Further, "[b]ecause the Subject Property is designated as within the 100-year floodplain on FEMA FIRM No. 08005C0177 K, revised December 17, 2010, 14200 is required to obtain and pay for flood insurance." (*Id.*, ¶ 30.) Further Plaintiff alleges that the value of the property has been impacted negatively by inclusion in the floodplain (*id.*, ¶ 35) and that the probability of flooding on the property has been significantly increased (*id.*, ¶ 36).

*LEGAL STANDARD*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

"Where a defending party pleads a statute of limitation and moves for summary judgment, and it appears that the action is barred by the appropriate statute of limitations and there is no genuine issue as to any material fact in connection with such statute, . . . then the motion for summary judgment should be granted." *Home Design Services, Inc. v. B & B Custom Homes, LLC,* 509 F. Supp. 2d 968, 971 (D. Colo. 2007), *quoting Borum v. Coffeyville State Bank*, 6 Fed. Appx. 709, 711 (10th Cir.2001). The court may grant a motion for summary judgment pursuant to a statute of limitations bar "only if the evidence presented, viewed in the light most favorable to Plaintiff, does not reveal any genuine issue of material fact concerning the accrual of Plaintiff's cause of action." *Miller v. Armstrong World Industries, Inc.*, 949 F.2d 1088, 1090 (10th Cir.1991); *cf. Hallgren v. United States Department of Energy*, 331 F.3d 588, 589 (8th Cir. 2003) (whether a claim is time-barred is a question of law that may be decided on

summary judgment where there are no genuine issues of material fact in dispute); *Overall v. Klotz*, 846 F. Supp. 297, 299 (S.D.N.Y.1994) ("[s]ummary judgment on the basis of the expiration of a statute of limitation . . . is appropriate where the plaintiff fails to show the existence of any genuine issue of fact relating to the statute of limitations defense"). The proper application of the statute of limitations and the date the statute of limitations accrues under undisputed facts are questions of law. *Parkhurst v. Lampert,* 264 Fed.Appx. 748, 749 (10th Cir. 2008) citing *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005).

### *UNDISPUTED MATERIAL FACTS*

The series of relevant events and the dates upon which certain events took place are not disputed by the parties. As taken from the briefs, supplemental briefs, and other pleadings in the record, the following is an undisputed chronology of relevant dates.

| | |
|---|---|
| July 31, 1995 | Plaintiff purchased the property located at 14200 E. Colfax Avenue, Aurora, Colorado 80011-6712. (Doc. No. 3, Petition ¶¶ 1–2.) A portion of the unimproved area of the Subject Property was included in the then current floodplain and FIRM. (*Id*. at ¶¶ 13, 14.) |
| April 1, 1997 | CDOT began physical median improvements to Colfax Avenue east of I-225 in Aurora, Colorado ("Colfax Median Improvements") (See, Aurora Supp.Br., Ex. G, CDOT Map; see also Affidavit of Vern A. Adam, Senior Water Project Manager, Capital Projects Division of the Aurora Water Department (Aug. 14, 2013), [Doc. No. 35-3], ¶ 7 ("Adam Aff.").) |
| July 1, 1997 | Colfax Median Improvements were complete. (Aurora Supp.Br., Ex. G, CDOT Map; Adam Aff., ¶ 7.) |
| January 2008 | Granby Ditch Inlet Project began. (Adam Aff., ¶ 8.) |

| | |
|---|---|
| 2008 | Subsequent to Granby Ditch project completion, Aurora applied for a Letter of Map Revision ("LOMR") to officially revise panels 40E, 185E and 180F of the then-existing FIRM No. 080002 (dated August 16, 1995).  (Adam Aff., ¶ 9.) |
| **November 7, 2008** | **Letters were sent to property owners, including to 14200 Properties LLC, from Aurora indicating that the designated property potentially would be affected by revisions to FIRM No. 080002. (See Adam Aff., ¶¶ 10–11 and Aurora Supp.Br., Ex. A; Affidavit of Elizabeth J. Lefebvre, Senior Public Information Officer at the Aurora Water Department, (Aug. 14, 2013)("Lefebvre Aff."), ¶¶ 5–8 and Ex. A.** |
| November 20, 2008 | Aurora published notice in The Aurora Sentinel titled "Flood Hazard Information Available."(MTD, Ex. A, "Flood Hazard Information Available.) |
| May 29, 2009 | FEMA notified the public of its intended map revision. (MTD Ex. B, FEMA Public Notification of Letter of Map Revision Determination Document (May 29, 2009).) |
| June 11, 2009 | FEMA publication of notice of elevation changes published in The Aurora Sentinel.   (MTD Ex. C, "Department of Homeland Security/Federal Emergency Management Agency, Proposed Base Flood Elevation Determination.") |
| June 18, 2009 | FEMA notice of elevation changes published in The Aurora Sentinel. (MTD, Ex. D, "Department of Homeland Security/Federal Emergency Management Agency, Proposed Base Flood Elevation Determination.") |
| **October 16, 2009** | **LOMR becomes effective after expiration of all appeal periods.** |
| October 27, 2009 | FEMA published in the Federal Register "Changes in Flood Elevation Determinations" notifying the public that the LOMR submitted by Aurora became effective on October 16, 2009, and officially revising the FIRM that had been in effect prior to that date. (MTD Ex. E, Department of Homeland Security/Federal Emergency Management Agency, "Changes in Flood Elevation Determinations," 74 Fed. Reg. 55156–58 (Oct. 27, 2009); see also MTD Ex. F, Department of Homeland Security/Federal Emergency |

|                    |                                                                                                                                                                                                                                                                                    |
|--------------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                    | Management Agency, "Changes in Flood Elevation Determinations," 75 Fed. Reg. 29201–05 (May 25, 2010).)                                                                                                                                                                             |
| November 8, 2010   | The City of Aurora adopts the LOMR previously made final by FEMA via the passage of Ordinance No. 2010-40. Ordinance No. 2010-40, page 5, Sec. 3, amends Aurora's City Code Section 70-136 and refers to the FEMA map revision process at issue. (Pl.Supp.Br., ¶ 6 and Ex. 4.)    |
| December 17, 2010  | Flood insurance rate map incorporating LOMR of October 16, 2009.                                                                                                                                                                                                                   |
| January 12, 2011   | Letter to Plaintiff from its lender notifying Plaintiff that the Subject Property was designated in a floodplain and that flood insurance would be required. (Resp., Ex. 2).                                                                                                       |
| December 17, 2012  | Plaintiff filed its Petition in Colorado state court. (See Petition, Doc. No. 3.)                                                                                                                                                                                                  |

*ANALYSIS*

Plaintiff does not dispute that it was aware of the construction on the Colfax Median Improvements when they occurred in 1997.  What Plaintiff avers it did not know at the time, however, was that the Colfax Median Improvements affected the 100-year floodplain, thereafter causing him damage by inclusion of the Subject Property in the flooplain.  This inclusion triggered a requirement that Plaintiff purchase flood insurance once the Flood Insurance Rate Map was revised to reflect the inclusion of the Subject Property in the floodplain.

It is not disputed that in 2008 the Aurora Water Department provided structural engineering improvements to a watershed near Colfax and I-225 and entitled the project "Granby Inlet Project" ( Aurora Supp.Br. at 3), although Plaintiff does not attribute any evidentiary value

to this fact.  It is also not disputed that Aurora did not seek to modify the August 16, 1995 FIRM #0800020180E until 200,8 after completion of the Granby Inlet Project.  (*Id.*)[2]

Both parties agree that the statute of limitations applicable to this action is two years.

Colo. Rev. Stat. § 13-80-102 provides

> (1) The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within two years after the cause of action accrues, and not thereafter:
> . . .
> (f) All actions against any public or governmental entity or any employee of a public or governmental entity for which insurance coverage is provided pursuant to article 14 of title 24, C.R.S.

Colo. Rev. Stat. § 13-80-102(1)(f).

Any dates in 1997 (when the Colfax Median Improvements were made) up and through 2008 (when the Granby Ditch Project was complete) fall outside the two-year statute of limitations for bringing this action if accrual is deemed to be the same as the injury date. Therefore, whether the topography of land surrounding and including the subject property changed as a result of the 1997 Colfax Median Improvements or the Granby Inlet Project (or both or anything in between), thus necessitating the application for a Letter of Map Revision, although disputed, is not relevant or material for purposes of deciding the limitations question before the

---

[2] 44 C.F.R. § 65.3 provides "[a] community's base flood elevations may increase or decrease resulting from physical changes affecting flooding conditions. As soon as practicable, but not later than six months after the date such information becomes available, a community shall notify the Administrator of the changes by submitting technical or scientific data in accordance with this part. Such a submission is necessary so that upon confirmation of those physical changes affecting flooding conditions, risk premium rates and flood plain management requirements will be based upon current data."

Court.  There is no evidence to suggest that during either project an average citizen would have been on notice that the floodplain elevation was being changed such that it would cause neighboring properties to become "inundated in the 100-year floodplain" and that such inundation would cause those neighboring properties to be subject to a mandatory requirement that flood insurance be subsequently purchased.  Indeed, between 1997 and 2012, according to Plaintiff's claims, Plaintiff was either not required to or was *de facto* pardoned from compliance with the flood insurance requirement even though the property was, according to Plaintiff, burdened by the change in the floodway created by the Colfax Median Improvements.

Although the Defendant claims that Plaintiff seeks damages as a result in the changes to the FIRM, Plaintiff's Petition states

> 35. The Subject Property has been damaged by virtue of CDOT's actions in proceeding with the [Colfax Median Improvements] Project and/or the inactions of the City in its failure to enforce NFIP standards, as the Subject Property has been placed in the 100-year floodplain, substantially impairing and restricting 14200's uses and enjoyment of the Subject Property, and in addition, causing significant diminution in the market value of the Subject Property.
>
> 36. The Subject Property has been damaged by virtue of CDOT's actions in proceeding with the [Colfax Median Improvements] Project and/or the inactions of the City in its failure to enforce NFIP standards, as the Subject Property has been placed in the 100-year floodplain, significantly increasing the probability of flooding on the Subject Property.

(Petition, ¶¶ 35 and 36.)  According to the Petition, the <u>injury</u> to the plaintiff's property occurred in 1996-1997 when the flood elevation was changed by the Colfax Median Improvements, including the elimination of a center ditch in favor of raised medians.  The resulting necessity for Plaintiff to purchase flood insurance once the FIRM finally was adjusted to reflect the

engineering changes was just one facet of calculable damages, not the actual injury to the property about which Plaintiff complains. In addition to injury, however, a claimant's scienter is a vital component of the claim accrual equation.

The parties apparently are in disagreement about which of two accrual statutes is applicable to this case. Plaintiff argues that Colo. Rev. Stat. § 13-80-108(1), providing "a cause of action for injury to person, property, reputation, possession, relationship, or status shall be considered to accrue on the date *both the injury and its cause* are known or should have been known by the exercise of reasonable diligence" is the applicable standard. (*Id.*, emphasis added.) Defendant Aurora argues that Colo. Rev. Stat. § 13-80-108(8), providing "A cause of action for losses or damages not otherwise enumerated in this article shall be deemed to accrue *when the injury, loss, damage, or conduct giving rise to the cause of action* is discovered or should have been discovered by the exercise of reasonable diligence" determines the accrual question. (*Id.*, emphasis added.)

Under either provision, there is no disagreement that the action does not accrue until the Plaintiff either knew of should have known certain things or until Plaintiff discovered or should have discovered certain things. The concepts of knowing and discovering are without practical difference. The plain language "actually knew or should have known" or "discovered or should have discovered" simply refer to separate types of knowledge. *Lombard v. Colorado Outdoor Educ. Center, Inc.*, 187 P.3d 565, 571 (Colo. 2008); *see also Bach v. Hyatt Corp.*, Civil Action No. 08-cv-00842-REB-KMT, 2009 WL 347478, at *2 (D. Colo. Feb, 11, 2009). The difference between these two levels of erudition does not turn on the concepts of knowledge verses

discovery, but rather on the type of knowledge or discovery–either actual or constructive. Constructive knowledge is that kind of knowledge a person exercising reasonable diligence <u>should</u> have had and that will thus be inferred to him or her under the law. *Id.*; *See also, Brighton Pharmacy Inc. v. Colo. State Pharmacy Bd.,* 160 P.3d 412, 418 (Colo. App. 2007) (to determine whether a person "should have known" certain information, the court applies an objectively reasonable person standard); *Full Moon Saloon, Inc. v. City of Loveland*, 111 P.3d 568, 570 (Colo. App. 2005) (if knowledge could have been obtained through the exercise of reasonable care and diligence, constructive knowledge may be inferred); *Morgan v. Bd. of Water Works*, 837 P.2d 300, 303 (Colo. App. 1992) (even where employees did not have actual knowledge of a danger on the premises, they were deemed to have constructive notice if they should have known of the danger through the exercise of ordinary diligence).

There is no evidence that Plaintiff actually knew of the injury, to wit; his property had been rendered part of the floodplain, which would increase his chances of flooding and require purchase of flood insurance, in either 1997 when the Colfax Median Improvements were undertaken or in 2008 when the Granby Ditch Improvement Project was completed. There also is no inference that Plaintiff should have reasonably known or discovered the injury by mere fact of the improvements being made.

The real difference between the two accrual statutes put forth by the parties is whether Plaintiff must have actual or constructive knowledge of just the injury to the Subject Property (required in subsection (8)) or whether Plaintiff must have actual or constructive knowledge of both the injury <u>and</u> the cause of the injury (required for subsection (1)). Although the Court

agrees with the Plaintiff that the correct accrual statute is Colo. Rev. Stat. § 13-80-108(1) requiring Plaintiff to have constructive or actual notice of both the injury and the cause of the injury, the undisputed evidence before the Court is that the accrual of Plaintiff's claims, whether under subsection (8) or subsection (1), occurred more than two years prior to the filing of the Complaint on December 17, 2012, thus barring Plaintiff's action.

The undisputed evidence reveals that Defendant Aurora sent Plaintiff actual notice of injury or potential injury to the property on November 7, 2008. The letter individually addressed and sent to Plaintiff at the Subject Property address advised that the City of Aurora was applying for a Letter of Map Revision from FEMA to revise the Flood Insurance Rate Map, which included his property.  (Aurora Supp.Br., Ex. K, ["Notice Letter"].)  The letter was captioned, "Notification of 1% (100-year) annual chance water-surface elevation increases and widening of the 1% annual chance floodplain." (*Id.*)  As noted in the Petition, Plaintiff already was aware at the time he purchased the subject property that a portion of his unimproved property was included in a floodplain and that the remainder of property was immediately adjacent to a mapped floodplain.  The Notice Letter advised the plaintiff that an updated hydrology and hydraulics study in the area including his property ("from I-225/Colfax Avenue upstream, to Airport Boulevard/Buckley Road") was the basis for seeking the update to the FIRM.  The letter advised that "the LOMR **will** increase the elevation of the 100-year floodplain **and widen the floodplain limits at 14200 E. Colfax Avenue**." (*Id.*, emphasis added.)  The letter advised 14200 Properties LLC to contact its insurer immediately "for assistance in determining your specific flood insurance needs."

Letters identical to that sent to Plaintiff were also sent to other adjacent properties that would be affected by the changes in elevation and the existing FIRM. (See Aurora Supp.Br, Ex. A, LeFebvre Aff., letters sent to 14200, 14290, 14300, 14400, 14490, 14500 and 14700 E. Colfax Avenue, Aurora, CO 80011-6712.) These properties all are immediately neighboring properties to Plaintiff, thus increasing the chance that each neighbor would be advised of the floodplain change through normal discourse as well as the specific Notice Letter. None of the letters, including the one sent to Plaintiff at 14200 E. Colfax Avenue, was returned to Aurora as undeliverable. (LeFebvre Aff., ¶ 11.) The Court notes that the address on the Notice Letter is identical to the address on the letter that Plaintiff claims was its first notice of any change in the floodplain, with only the exception that the January 12, 2011 letter included the names "Jeffrey and Lucy Maxwell" in the address heading. (See Resp, Ex. 2, Doc. No. 20-2.)

Although the Plaintiff neither admits nor denies receipt of the November 9, 2008 letter, this letter and the undisputed circumstances of its mailing indicate that the defendant should have known or should have discovered that its property was part of a petition or notice to alter floodplain maps and insurance rates and requirements and put Plaintiff on notice that it should further investigate and monitor the activity with respect to the floodplain elevations. Therefore, whether or not Plaintiff admits it received and reviewed the letter is immaterial to the accrual determination. The court finds that Plaintiff had constructive notice at or near the time the Notice Letter was sent. In spite of Aurora's noticing Plaintiff by both personal, specific written communication and by repeated publication in local media sources, Plaintiff chose to do nothing until his mortgage company insisted that he obtain flood insurance on the property. Even


knowing that part of his property already was located in a floodplain, and knowing that the remainder of his property sat immediately adjacent to the floodplain as it existed prior to the Colfax Median Improvements, Plaintiff ignored the fray until direct personal consequences came to bear in the form of flood insurance premiums. The law cannot be a mechanism to reward those who sit on their rights, engaging in ostrich-like behavior until the time for remedy has long passed. *Brunet v. Quizno's Franchise Co. LLC*, Civil Action No. 07-cv-01717-PAB-KMT, 2009 WL 902434, at *4 (D. Colo. April 1, 2009); *Martinez v. Napolitano*, Civil No., 11-cv-01158-REB-KMT, 2012 WL 1044621, at *4 (D. Colo. March 28, 2012).

At the very least, the Notice Letter alerted Plaintiff to pay close and careful attention to postings having to do with his property concerning the LOMR. Between November 20, 2008 and June 18, 2009, notifications concerning the subject property in connection with the Notice Letter were published at least four times. Plaintiff did not protest the re-mapping, nor in any manner pursue any claim or entitlement to relief as a result of the request for the LOMR, the process of investigation and presentation of the LOMR, or the final adoption of the LOMR.

This Court therefore finds that by October 16, 2009[3] at the very latest, the date upon which the LOMR had become effective, Plaintiff knew or should have known of both the injury and the cause of the injury to its property.

---

[3]FEMA published its "Changes in Flood Elevation Determinations" in the Federal Register on October 27, 2009, notifying the public that the LOMR became effective on October 16, 2009, and officially revising the FIRM which had been in effect prior to that date. (74 Fed. Reg. 55156–58 (Oct. 27, 2009) and 75 Fed. Reg. 29201–05 (May 25, 2010).) As October 27, 2009 is also outside the two-year limitation period, the Court does not address whether this date should be used instead of the effective date of the LOMR.

Plaintiff argues in its supplemental briefing that language in the LOMR stating "the floodway revision we have described in this letter, while acceptable to us, must also be acceptable to your community and adopted by appropriate community action, as specified in Paragraph 60.3(d) of the NFIP regulations" (Pl.Supp.Br., Ex. 4) means that at least part of Plaintiff's damages–the requirement to purchase floor insurance–could not be known until adoption of the LOMR by Aurora.  However, it is not disputed that Aurora adopted the LOMR when it passed Ordinance No. 2010-40 on November 8, 2010, a date still outside the limitations period.  The Court finds the date the map was published, December 17, 2010, to be irrelevant to the accrual calculation.  The map is merely a pictorial reflection of the action that was finalized on October 16, 2009.

Therefore, Plaintiff's Petition in Inverse Condemnation and Jury Demand, filed on December 17, 2012, is barred by the applicable statute of limitation.

IT IS THEREFORE **ORDERED**

1.      Defendant City of Aurora's Motion [for Summary Judgment], Doc. No. 15, is GRANTED;

2.      Plaintiff's claims against Defendant City of Aurora, Colorado, are DISMISSED WITH PREJUDICE;

3.      Defendant City of Aurora, Colorado, is and shall be REMOVED as a named party to this action, and the case caption is and shall be AMENDED accordingly;

4. At the time judgment enters in the case, judgment SHALL ENTER with prejudice on behalf of Defendant City of Aurora, Colorado, and against Plaintiff, 14200 PROPERTIES, L.L.C., as to all claims and causes of action asserted against it; and,

5. Defendant City of Aurora, Colorado is awarded its costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated this 5th day of September, 2013.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge